UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-288-GWU

VADA ANN JUSTUS,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

07-288  Vada Ann Justus

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.   <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

07-288  Vada Ann Justus

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the

3

alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).   However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

07-288  Vada Ann Justus

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley  v.
Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Vada Ann Justus, was found by an Administrative Law Judge
(ALJ) to have "severe" impairments consisting of depression and anxiety.  (Tr. 17).
Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ
determined that Mrs. Justus retained the residual functional capacity to perform her
past relevant work as a lunch monitor and attendance clerk, and therefore was not
entitled to benefits.  (Tr. 21-2).  The Appeals Council declined to review, and this
action followed.

At the administrative hearing, the ALJ asked the VE whether a person with
the plaintiff's work history and educational background could perform any jobs if she
had no exertional limitations, but had a "limited but satisfactory" ability to deal with
the public, deal with work stresses, and understand, remember, and carry out
complex instructions.  (Tr. 324).  The VE testified that such a person would be able
to perform the plaintiff's past work.  (Id.).

On appeal, this court must determine whether the hypothetical factors
selected by the ALJ are supported by substantial evidence, and that they fairly
depict the plaintiff's condition.  The court finds that the hypothetical factors are not
supported, and a remand will be required for additional consideration.

7

Mrs. Justus, who had worked steadily from 1989 to October, 2004, alleged disability beginning October 28, 2004 because she was unable to concentrate and felt as if she was "falling apart."  (Tr. 69).  She testified that her job was becoming overwhelming and she was unable to continue her job duties, even when she brought her work home.  (Tr. 309).  She was having stressful situations involving both work and with her family.  (Tr. 310).  She had been hospitalized for a "nervous breakdown" and was still seeing a psychiatrist at the time of the hearing.  (Tr. 309-10).  The plaintiff's husband testified that his wife kept getting more and more behind in her work after their daughter had an accident and she was so nervous that she would rock back and forth.  (Tr. 316, 318).  Eventually, he had to take her to the hospital.  (Tr. 318).  The medication prescribed by her psychiatrist had helped to a certain extent, but they lacked medical insurance, and Mr. Justus reported the psychiatrist wanted to do more extensive tests.  (Tr. 320).  Mr. Justus noted that his wife had had a previous nervous breakdown in approximately 1991 which had required hospitalization.  (Tr. 322).

Medical evidence in the transcript includes records of a psychiatric hospitalization in July, 1990, after the plaintiff was referred by her primary physician for depression, decreased sleep, crying spells, and feelings of guilt.  (Tr. 122).  She was diagnosed with an adjustment disorder and a dysthymic disorder, but left the hospital against medical advice.  (Tr. 122-3).  More recently, the plaintiff's treating physician, Dr. John Patton, referred her to a psychiatrist, Dr. Bokhari, and then

recommended hospitalization because he felt that she was at a high risk for suicide in November, 2004.  (Tr. 151-2).

Records from Lake Cumberland Regional Hospital show that the plaintiff was admitted on November 4, 2004 on referral from Dr. Patton, with a set of problems including uncontrollable crying, an inability to rest, an inability to take medications, eat, or to drink, and a feeling that she would be happier if she were dead.  (Tr. 124, 187).  Family problems included her husband's recent diagnosis with Hepatitis C and finding out that her daughter had become pregnant.  (Id.).  The psychiatrist, Dr. Robina Bokhari, noted minimal grooming, limited eye contact, constant rocking and tremors, and excessive crying.  (Tr. 126).  She diagnosed recurrent severe major depressive disorder and a generalized anxiety disorder, with a Global Assessment of Functioning (GAF) score of only 30.  (Id.).  A GAF score of 30 can reflect behavior considerably influenced by delusions or hallucinations, or serious impairment in communication or judgment, or inability to function in almost all areas. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR), p. 34.  After five days, the patient, who had been prescribed several medications, stated that she felt better, although she was still anxious and nervous, and the hospital staff reported no suicidal thoughts.  (Tr. 185).  Dr. Bokhari assigned a current GAF score of 50, reflecting "serious symptoms" per the DSM-IV-TR, prescribed the medications Klonopin and Effexor, and asked her patient to follow up as an outpatient.  (Id.).  The plaintiff was seen on several occasions over the

next few months and it was noted that she was still anxious and had decreased attention and concentration.  (Tr. 209-11).  The GAF remained at 50.

Dr. Gary Maryman, a psychologist, conducted a consultative examination of Mrs. Justus on March 1, 2005.  (Tr. 200).  The plaintiff gave some of her history, but apparently Dr. Maryman did not have any records available for review.   On examination, Dr. Maryman noted that the plaintiff was anxious, had some motor tremulousness and upper body tremulousness, and was distressed to the point that she was close to or completely in tears much of the time.  (Tr. 201).  Apparently, her concentration was poor in that she had trouble with the serial three testing.  (Tr. 202).   Subjectively, Mrs. Justus described feelings of being overwhelmed, an inability to stay focused, and a fear of answering the telephone.  (Tr. 203).  She felt stressed by her daughter's problems, and thought about suicide.  (Id.).   Dr. Maryman had the impression that she was overreacting to her daughters' lifestyle, but also diagnosed an anxiety disorder and severe major depression, with a GAF of 56, indicating "moderate" symptoms.  (Tr. 204).  The psychologist did not complete a specific medical assessment form, but opined that Mrs. Justus might have difficulty with complex instructions or work assignments and interacting with the general public, and was not well suited to fast-paced and high pressure work atmospheres.  (Tr. 204-5).

A state agency psychologist, Dr. Stephen Scher, apparently reviewed the evidence at this point and concluded that Mrs. Justus would be "moderately limited"

in her ability to understand, remember, and carry out detailed instructions, in her ability to work in coordination or proximity to others without being distracted by them, in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, in her ability to interact appropriately with the general public, and in her ability to respond appropriately to changes in the work setting.  (Tr. 217-18).  Dr. Scher noted the plaintiff's hospitalization and continued treatment by Dr. Bokhari, but placed primary weight on Dr. Maryman's examination and opined that the plaintiff's allegations were credible but not to a marked degree of severity at the present time.  (Tr. 219).

Dr. Bokhari completed a functional capacity assessment on May 17, 2005 indicating that the plaintiff had "extreme" limitations in her ability to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically-based symptoms, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to tolerate the ordinary stresses associated with daily work activity.  (Tr. 207).  She would also have a "marked" restriction in several other areas.  (Tr. 206-7).  She noted that the plaintiff had been under her care since November 4, 2004 in both the inpatient and outpatient settings, had been diagnosed with severe depression, anxiety, and inability to cope

11

with stresses, and while there was some improvement in her "emotional presentation," she still had a moderate cognitive impairment, especially with attention and concentration.  (Tr. 208).  Her speech would become stuttering and anxious, and she would shake.  She "stays overwhelmed."  (Id.).

Another state agency psychologist, Dr. H. Thompson Prout, reviewed the evidence on May 27, 2005, but apparently did not consider it necessary to comment on Dr. Bokhari's restrictions.  He affirmed Dr. Scher's report.  (Tr. 221-3).

At the same time Dr. Prout was completing his report, the plaintiff was being discharged from a third psychiatric hospitalization with a final diagnosis of recurrent major depressive disorder and "stable" generalized anxiety disorder, and a current GAF score of 45-50, up from 30-36 on admission.  (Tr. 285, 287).

Subsequent notes from Dr. Bokhari indicate continued problems including an inability to handle stress or focus, and feeling jittery and crying.  (E.g., Tr. 274, 300).  The psychiatrist's GAF score remained 50.

Although Dr. Bokhari was a treating physician, the ALJ perfunctorily dismissed her opinion as being inconsistent with her treatment notes and with the overall medical evidence.  (Tr. 21).  While there may be some evidence in Dr. Bokhari's office notes that the plaintiff underwent improvement after the May, 2005 hospitalization, her GAF score indicated that the plaintiff was not functioning any better, on the whole.  Moreover, even if Dr. Bokhari's assessment were not entitled to controlling weight, the state agency reviewers also found greater limitations than

07-288  Vada Ann Justus

the ALJ, even though their review of the record was incomplete.  The only source conceivably supporting the hypothetical factors would be Dr. Maryman, a one-time examiner who did not have the benefit of a review of previous records and who appeared to place only minor restrictions on the plaintiff, in stark contrast to his description of the plaintiff as trembling and being in tears during his examination and having difficulty completing tasks regarding concentration.  Given the apparent seriousness with which the claimant's treating source viewed her condition, not to mention her subsequent hospitalization, Dr. Maryman's report simply does not provide sufficient evidence to support the ALJ's conclusion.  At a minimum, the ALJ should have obtained an opinion from a medical expert who had access to all of the evidence.

The decision will be remanded for further consideration.

This the 14th day of May, 2008.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**